## RYBOLT v. JARRETT et al.
### No. 4605.

Circuit Court of Appeals, Fourth Circuit.

June 10, 1940.

H. D. Rollins, of Charleston, W. Va., for appellant.

John N. Charnock and Mose E. Boiarsky, both of Charleston, W. Va. (Sam D. Lopinsky and Frances Lopinsky, both of Charleston, W. Va., on the brief), for appellees.

Before SOPER, DOBIE, and NORTHCOTT, Circuit Judges.

DOBIE, Circuit Judge.

This appeal presents for our determination only a single question. The plaintiff, in his complaint filed in the United States District Court for the Southern District of West Virginia, brought an action under the West Virginia Statute of Death by Wrongful Act, alleging in his complaint that he was a citizen of the State of Indiana; that he had been duly appointed by the Circuit Court of Howard County, Indiana, administrator of the personal estate of Maxine Collier; that she was at the time of her death a citizen of Indiana; that on March 25, 1939, she died intestate in West Virginia as the result of the wrongful acts committed in West Virginia by the defendants, who were citi-

zens of West Virginia, and that her sole distributee was a minor son, who is also a citizen of the State of Indiana. The trial judge dismissed the action on the ground that such an action could not be maintained in West Virginia by a personal representative appointed in another state. So we are here concerned solely with the correctness of this ruling.

At the outset, it might be remarked that there is here no question of the jurisdiction of the federal court as a federal court. Further, the problem is one to be determined entirely by the interpretation of the statutes and policy of the State of West Virginia. Accordingly, had the highest court of West Virginia spoken clearly on this question, we should unhesitatingly follow its decision. But this precise problem appears never to have been decided by that court. If any inference is to be drawn from this, since the West Virginia Statute of Death by Wrongful Act was enacted more than seventy years ago, we believe that the proper inference would be a general feeling among members of the Bar of West Virginia that such a suit could not be maintained in a West Virginia Court.

The West Virginia Statute of Death by Wrongful Act, which is necessarily controlling here, reads as follows:

"*Action for Wrongful Death.*—Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter. No action, however, shall be maintained by the personal representative of one who, not an infant, after injury, has compromised for such injury and accepted satisfaction therefor previous to his death. Any right of action which may hereafter accrue by reason of such injury done to the person of another shall survive the death of the wrong-doer, and may be enforced against the executor or administrator, either by reviving against such personal representative a suit which may have been brought against the wrong-doer himself in his lifetime, or by bringing an original suit against his personal representative after his death, whether or not the death of the wrong-doer occurred before or after the death of the injured party."

"*Party Plaintiff in Such Action; Damages; Distribution; Limitation.*—Every such action shall be brought by and in the name of the personal representative of such deceased person; and the amount recovered in every such action shall be distributed to the parties and in the proportion provided by law in relation to the distribution of personal estate left by persons dying intestate. In every such action the jury may give such damages as they shall deem fair and just, not exceeding ten thousand dollars, and the amount so recovered shall not be subject to any debts or liabilities of the deceased. Every such action shall be commenced within two years after the death of such deceased person." West Virginia Code, Chapter 55, Article 7, and §§ 5 and 6.

In this connection, Professor Raleigh Minor, in his scholarly work, Conflict of Laws (p. 238) has stated: "The general rule is that the law of the place where the tort resulting in death is committed (lex loci delicti) will determine whether an action can be brought therefor and the party who is to bring it, as well as the time within which the suit is to be brought, the limit of damages, and the persons for whose benefit the damages are to be given. These rights are the creatures of statute, and the lex loci delicti must be strictly followed."

The general question of whether under a statute of death by wrongful act which designates the personal representative as the proper person to bring the suit, the term "personal representative" is broad enough to include a personal representative appointed in a state other than that in which suit is brought, or whether this term should be limited to a personal representative appointed by the state where the suit is brought, or such a representative appointed by the state where the death was caused, has been variously decided in many of the courts of last resort in states of the United States. Naturally, difference in the language of the statutes and the presence or absence of other qualifying statutes may account for some differences in the opinions. Discussions of this

644

problem will be found in the authorities cited below.

In favor of the view taken by the lower court in this case is, of course, the familiar common-law principle that a personal representative can sue only in the state of his appointment. Thus in the American Law Institute's Restatement on the Conflict of Laws, the black letter of § 507 reads: "In the absence of a statute permitting it, a foreign administrator cannot sue to recover a claim belonging to a decedent." However, as is indicated in the authorities below, a foreign representative is frequently permitted to sue by comity when the interest of residents of the state of suit would not thereby be adversely affected. ·

Again, it is pointed out that an administrator suing under a typical statute of death by wrongful act is acting in a peculiar and distinctive role. He sues, it is said, not really as a representative of the deceased, to recover assets to be applied, as is ordinarily the case, to the payment of the debts of the deceased. Under the West Virginia Statute of Death by Wrongful Act, the amount recovered is not subject to the debts of the deceased, but has to be turned over to designated beneficiaries. Many of the cases have pointed out that the so-called personal representative under such a statute sues not really as a personal representative but rather as a statutory trustee or quasi-trustee for the beneficiaries. It might also be noted that modern courts have been so liberal in applying to foreign personal representatives the rule of comity indicated above that, in actual practice, permission to a foreign personal representative to sue has become almost the rule rather than the exception.

Some of the rules of statutory interpretation are not very helpful in this connection. Thus, it has frequently been said that a statute in derogation of the common law, which creates a right non-existent at common law, should be strictly construed. On the other hand, it has often been pointed out that remedial statutes should be liberally construed. A statute of death by wrongful act is a statute creating a right that did not exist at common law; yet it is equally a remedial statute which rights a very ancient and very cruel wrong. Accordingly, we find in the cases that the courts have approached the problem of interpreting these statutes from many angles and from varied viewpoints.

We believe that the doctrine laid down by the liberal courts is the better one. It is very easy to point out many unfortunate results that would follow from a strict interpretation of a statute of death by wrongful act which holds that, when the right to sue is given by the statute to the personal representative, this means solely a personal representative appointed by the court of the state in which suit is brought. This is admirably brought out in a note in 31 Harvard Law Review 1161; also in the leading case of Ghilain v. Couture, 84 N.H. 48, 146 A. 395, which is elaborately annotated in 65 A.L.R. at pages 563–573.

■ Accordingly, were the question an open one depending solely upon the interpretation of the West Virginia Statute of Death by Wrongful Act, we should be inclined to follow the modern liberal doctrine and to hold in the instant case that the action in question could be maintained in the United States District Court for the Southern District of West Virginia by an administrator duly appointed by a proper court of Indiana. But there is another West Virginia statute which we believe to be controlling, and which, we think, forces us to reach the opposite conclusion, the conclusion arrived at by the learned trial judge in the instant case below. We know that many cases can be found in this and other fields of the law in which judges have felt themselves justified in departing from the letter of a statute when this would accomplish a desirable result. We are familiar with the oft-quoted doctrine of the superiority of the spirit of a statute over its letter, and we are not insensible to the ancient maxim Qui haeret in litera haeret in cortice. But, when the legislature of a state seems to have spoken in quite clear language and, when by so doing, the legislature appears to have declared a state policy with quite accurate precision, we are not willing to torture the language of the legislature or to distort its spirit, however keenly we may feel that the legislative policy is too rigid, undesirable, or even unfair.

The West Virginia Code, 1937, Chapter 44-5-3, provides: "Notwithstanding any other provision of law, no person not a resident of this State shall be appointed

or act as executor, administrator, curator, guardian, or committee, except that a testator who is a nonresident of the State at the time of his death may name, and there may be appointed and act, a nonresident as his executor, and except that for the guardian of an infant who is a nonresident of the State there may be appointed the same person who was appointed guardian at the domicile of the infant."

It has been argued with great force and ability that this statute is applicable only to executors or administrators acting in what might be called a general or usual capacity, when such an executor or administrator acts primarily for the creditors of the deceased and secondarily for the benefit of the beneficiaries of the deceased. It is quite familiar under our system of law that the least preferred creditor of a deceased individual participates in the assets of the deceased ahead of the most highly favored beneficiary. So, it has been urged on us, when as is true under the West Virginia Statute of Death by Wrongful Act, any recovery goes to the beneficiary or beneficiaries and is never, under any circumstances, applied to the debts of the deceased, the personal representative who sues is not in reality a personal representative at all but is purely a statutory trustee for the beneficiary or beneficiaries. This argument gains added weight by virtue of the fact that under the West Virginia Statute of Death by Wrongful Act (which is not true of many statutes of the same character), suit does not lie when there is no beneficiary. Wilder v. Charleston Transit Co., 120 W. Va. 319, 197 S.E. 814, 117 A.L.R. 948. Under the statutes of death by wrongful act in many states, even when there is no beneficiary of the deceased, a recovery may be had and the amount recovered goes to the state or to some designated public arm of the state. Yet we should not forget that the ordinary personal representative acts on behalf of both creditors and beneficiaries of the deceased. After the expenses of administration and the debts of the deceased have been paid, the surplus of the estate (if any there be) is held by the personal representative for payment to these beneficiaries. So, with only one office, the ordinary personal representative plays, as it were, a dual role; while he, in that same office, when suing under the typical statute of death by wrongful act, plays only one of those roles.

We now proceed first to an analysis of the words of the West Virginia restrictive statute just set out. The Statute begins: *"Notwithstanding any other provision of law".* This, we think, is quite significant. If it means anything at all, it would appear to indicate that the draftsman of this Statute knew fully that there were other provisions in the West Virginia Statutes applicable to personal representatives, and, when this restrictive statute was enacted, the Statute of Death by Wrongful Act had been on the statute books of West Virginia for a number of years. It would thus seem that by this phrase, the legislature must have contemplated so important a statute as the West Virginia Statute of Death by Wrongful Act.

■ The Statute, too, provides: "No person not a resident of this State shall be appointed *or act* as executor, administrator, curator, guardian, or committee." The italicized words "or act", we believe, must have some meaning, even if the foreign administrator is ultimately a trustee for the beneficiaries; for he is acting as a personal representative, since that is the precise term used in the Statute of Death by Wrongful Act. And further, it might be pointed out, the Statute expressly contains in its prohibition not only personal representatives but curators, guardians and committees who are not at all representatives of dead persons but rather are trustees of the property of persons who are still alive. Again, this restrictive statute excepts from its operation a nonresident executor appointed by will, who may both be appointed and may act in West Virginia, also the guardian of a nonresident infant and this Statute permits such an appointment in West Virginia, when the person sought to be appointed there as guardian of the infant has already been appointed guardian at the domicile of the infant. There is some force here in the maxim Expressio unius est exclusio alterius. When in a statute of such clean cut restrictive force, the legislature undertook to make certain explicit exceptions, it seems a fair implication that the legislature intended to exclude other exceptions, and thus to make the statute say what it means and mean what it says.

■ Now for the cases. The only case in West Virginia in which the question involved in this appeal was squarely presented seems to be Klug v. Martinsburg Power Co., D. C., 1916, 229 F. 861. In

this case, United States District Judge Dayton arrived at the conclusion reached by Judge McClintic in the instant case. The opinion is short and Judge Dayton did not discuss either the West Virginia Statute of Death by Wrongful Act or the restrictive West Virginia Statute set out above. He simply applied the old common-law rule that the powers of an administrator do not extend beyond the limit of the state of his appointment and that, since West Virginia has no statute authorizing foreign administrators to sue in the courts of West Virginia, the suit for death by wrongful act brought by and in the name of a Pennsylvania administrator would not lie.

Counsel for appellant relied heavily upon the opinion of United States Judge McDowell in Pearson v. Norfolk & Western Railway Co., U.S.D.C., W.D.Va., 1923, 286 F. 429. In that case a foreign administrator was permitted to sue under the West Virginia Statute of Death by Wrongful Act in a federal court in Virginia for a death alleged to have been wrongfully occasioned in West Virginia. Judge McDowell, squarely disagreeing with Judge Dayton, held that the foreign administrator could sue and placed his decision largely on the ground that the common-law rule in force in Virginia to the effect that a foreign administrator may not maintain an action in the courts of Virginia does not apply to an action to recover for the death of such representative's intestate under the West Virginia Statute of Death by Wrongful Act, because any amount recovered "shall not be subject to any debts or liabilities of the deceased", but goes to the beneficiaries designated under the West Virginia Statute of Death by Wrongful Act. In the first place, it should be noted that here Judge McDowell was determining the policy of Virginia as to suits brought in Virginia courts and not the policy of West Virginia as to suits brought in West Virginia courts; and this is none the less true, even though in each instance the suit was brought under the West Virginia Statute of Death by Wrongful Act. Again, the precise question which we must decide was not before the court as the opinion, 286 F. at page 431, states clearly: "The question whether in the case at bar the West Virginia statute [of Death by Wrongful Act] was intended to give the right of action to an administrator appointed in North Carolina, or to an administrator appointed in West Virginia, or to an administrator appointed in Virginia, is not raised."

Further, the Virginia Statute directed against non-resident personal representatives is by no means so rigid and so unrelenting as the similar statute in West Virginia. Virginia Code, 1936, Chapter 220A, § 5400a. The Virginia Statute does not contain the positive preliminary clause of the West Virginia Statute "Notwithstanding any other provision of law". The Virginia Statute does generally forbid the appointment of non-resident personal representatives for residents; but the Virginia Statute limits this prohibition to qualification and appointment in Virginia and does not within its prohibition include the words "*or act*" which are found in the West Virginia Statute. And the Virginia Statute, which is not true of the West Virginia Statute, expressly permits the appointment of a non-resident personal representative of a resident, provided there is also appointed a resident personal representative to serve with the non-resident personal representative.

The West Virginia case of Winning v. Silver Hill Oil Company, 89 W.Va. 70, 108 S.E. 593, 595, relied on by the appellant is not in point. In that case, suit was brought by a foreign *executor* who also occupied the capacity of express trustee. This was not a case of death by wrongful act and in its opinion the Court said: "But, if he is more than a foreign executor, if the *will* makes him also a trustee, he could sue without having been appointed as an executor in this state". In the instant case, there is no will which designates the plaintiff as trustee and he is, under the appointment of the Court of Indiana, solely administrator of the personal estate of the deceased. The opinion in the Winning case, too, specifically recites: "A foreign *executor* cannot maintain a suit in this state, unless authorized so to do by this statute or some other" and we are here confronted by this situation: not only is there no West Virginia statute affirmatively authorizing suits by foreign personal representatives but there seems to be a clean cut statute, as indicated above, expressly forbidding this.

It seems also that the Supreme Court of West Virginia has generally followed the common-law rule denying any extra-territorial effect to letters of administration.

Thus in Oney v. Ferguson, 41 W.Va. 568, 571, 23 S.E. 710, 711, the Court said: "A grant of administration abroad has no force extra territorium, and the executor or administrator cannot, as a rule, sue or be sued outside the state conferring his authority." See, also, Wirgman v. Provident Life & Trust Co., 79 W.Va. 562, 566, 92 S.E. 415, L.R.A.1918E, 715. And this Court, in a very recent case, has re-affirmed and re-declared this policy in Curl v. Ingram, W.Va., 6 S.E.2d 483, 484, when the Court, said: "A foreign personal representative may not maintain a suit in this state.* * * This is in conformity with the common law rule that letters of administration have no extra-territorial effect, and, consequently, that a foreign personal representative cannot prosecute a suit in another [foreign] jurisdiction unless there be legislative authorization therefor. * * * No statute of this state has granted such a right."

When merely the interpretation of the term "personal representative" in a statute of death by wrongful act is in question, modern text writers seem to favor the liberal rule that a non-resident personal representative may sue. Thus, Goodrich, Conflict of Laws, p. 213, states: "But, if the statute provides that the action is to be brought by the administrator or some other representative on behalf of designated beneficiaries, there seems no reason for an inflexible rule. The defendant, if he once pays to an authorized plaintiff, is discharged from further liability. It should be immaterial to him by whom the suit is brought. No one is injured by allowing an action to be brought wherever the defendant may be legally served, either by the personal representative appointed at the locus delicti, or where the deceased was domiciled, or at the place where suit is brought. It could be said that the question of the persons in whose name the suit is to be brought is a remedial matter, and that the lex fori must be complied with. But the decisions already discussed establish that the plaintiff need not have qualified as administrator at the forum. Strict adherence to technical rules regarding the proper party plaintiff will be productive of much hardship unless the rules are well defined and generally agreed upon."

Again, in Stumberg, Principles of Conflict of Laws, p. 176, we find: "There is a fundamental difference between suit by an administrator as representative of an estate, and an action for wrongful death. In actions for wrongful death, he is suing not to recover an asset of the estate which is subject to the claims of local creditors but as a statutory trustee to recover a sum for the benefit of certain named beneficiaries who alone have a legal interest. Since these beneficiaries are ultimately entitled to the fund recovered, no harm can be done by permitting any administrator to sue in any state where the defendant can be served with process. Such a practice might avoid considerable useless expense and annoyance."

In the note in 31 Harvard Law Review 1161, with regard to the interpretation of statutes of death by wrongful act in connection with the possibility of bringing such actions by foreign personal representatives, it is said: "The statutes under consideration are remedial; hence the usual rule of liberal construction should be applied and any representative held authorized to sue, irrespective of the jurisdiction in which he was appointed."

And, in an elaborate article in 16 American Jurisprudence, pp. 184, 185, we find: "With regard to the right of a foreign representative to maintain an action for wrongful death in the jurisdiction in which the cause of action arose, the authorities are not in harmony, but the public policy of the majority of jurisdictions in which the question has been determined, either as declared by the court or as expressed by legislative mandate, seems to sanction the right of a domiciliary personal representative appointed in another state to maintain an action for the death from a tort at the forum, under a statute of the forum which gives the right of action and provides that the action shall be brought by the personal representative."

It might be remarked that these authors, in the quotations given above, seem to deal solely with a statute of death by wrongful act; but they do not discuss the possible effect of a restrictive statute expressly directed against foreign personal representatives, such as is found in West Virginia.

The American Law Institute, in its Restatement on the Conflict of Laws, § 396, thus states the rule in black letter: "If the death statute of the state of wrong provides that suit for the death shall be brought by the personal representative of

the deceased, recovery can be had only by a person qualified to sue at the forum as personal representative of the deceased." And in the comment under this section, under the sub-title "B. Suit by foreign administrator", we find: "The common law rule is that an administrator can sue only in the state in which he is appointed. In some states, by statute, a foreign administrator is allowed to sue." No mention is here made of the distinction between ordinary personal representatives| and the personal representative suing under a statute for death by wrongful act, nor is there any discussion of the theory that in the latter situation, the personal representative is essentially a mere statutory trustee for the beneficiaries. Accordingly, since the West Virginia statutes and the West Virginia policy seem to regard with disfavor suits in that state by foreign personal representatives, it would appear that the holding of the trial judge in the instant case is in line with the doctrine set out in the Restatement.

We are fully alive, as we have indicated, to the advantages of the liberal rule for which the appellant in the instant case contends. Appellant further, in his oral argument through counsel, expressed the view that when, as in the instant case, the person killed is a non-resident, and the persons alleged to have been responsible for the death are residents of the state in which the tort occurred, it would be much fairer to have such an action tried in a federal court. If the personal representative must be a resident of this state, there would then be no diversity of citizenship on which the jurisdiction of the federal court could be based. In the view of the West Virginia statutes that we have taken, such considerations, we think, should be addressed to the Legislature. We cannot, as has been indicated in the earlier part of this opinion, disregard what seems to us the clear intent of state statutes for the purpose of bringing about results that appear to be fair and equitable. A fortiori, can we not distort the language of state statutes in order to confer jurisdiction of actions on a federal court.

The West Virginia Statute of Death by Wrongful Act gives the right to sue to the "personal representative". This term is a genus which can easily, by the logical process of dichotomy, be divided into two species: personal representatives appointed in West Virginia and those elsewhere appointed. Thus, under this statute, to permit a personal representative elsewhere appointed to sue under the Statute, we merely interpret an expressed genus as a genus and refuse to exclude therefrom one species included under that genus. But the restrictive statute of West Virginia directed against one species of personal representatives, non-residents, is equally (probably even more) direct and express. Therefore, the same interpretative technique that would induce us to include non-resident personal representatives under the affirmative provisions of the Statute of Death by Wrongful Act would seem (with added force and reason) to require us to exclude these under the broad negative provisions of the restrictive statute.

For reasons which have been set out, we believe that the ruling of the trial court was correct. We accordingly affirm the judgment of that court, based upon that ruling.

Affirmed.